UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN–SOUTHERN DIVISION

CANDACE ANDERSON,
    Plaintiff,
-vs-                                        Case No.
                                              Hon.
                                            **DEMAND FOR JURY TRIAL**
ENHANCED RECOVERY COMPANY, LLC,
MRS BPO, L.L.C., and
CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS,
    Defendants.

## COMPLAINT & JURY DEMAND

*Plaintiff Candace Anderson states the following claims for relief:*

### Nature of Action

1. This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and similar state consumer protection statutes, which prohibit abusive, deceptive and unfair collection practices.

2. Plaintiff's claims arise from Defendants' attempts to collect on a debt, which she does not owe, in the State of Michigan through the means and instrumentalities of interstate commerce and the mails.

### Jurisdiction

3. This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

4. This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## Venue

5. The transactions and occurrences which give rise to this action, namely the collection letters received by Plaintiff, occurred in Oakland County, Michigan.

6. Venue is proper in the Eastern District of Michigan.

## Parties

7. The Plaintiff to this lawsuit is Candace Anderson ("Ms. Anderson"), a natural person who resides in Southfield, MI 48076.

8. The Defendants to this lawsuit are as follows:

   a. Enhanced Recovery Company, LLC ("ERC"), a collection agency that conducts collection activities by use of the mails and telephone within the State of Michigan, and whose registered agent, The Corporation Company, maintains its office at 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025.

   b. MRS BPO, L.L.C. ("MRS"), a collection agency that conducts collection activities by use of the mails and telephone within the State of Michigan, and whose registered agent, National Corporate Research,

LTD, maintains its office at 229 Brookwood Drive, Suite 14, South Lyon, Michigan 48178.

c. Cellco Partnership d/b/a Verizon Wireless ("Verizon"), a foreign corporation doing business in Michigan.

## General Allegations

9. Ms. Anderson is a "consumer" as defined by 15 U.S.C. §1692a(3), as she is allegedly obligated to pay the Verizon debt at issue.

10. ERC and MRS both regularly collect debts owed to another and, therefore, each meets the definition of a "debt collector" under 15 U.S.C. §1692a(6).

11. At issue is a Verizon account opened using Ms. Anderson's personal identifiers, without her knowledge or consent, which has resulted in unlawful collection attempts against Ms. Anderson by ERC and MRS.

12. The debt at issue arises out of an alleged transaction that was primarily for personal, family or household purposes and, therefore, meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

13. Ms. Anderson believes that her identity was stolen sometime prior to April 2014, and that the opening of the fraudulent Verizon account stems from that identity theft.

14. In or around May 2014, Ms. Anderson filed a police report and disputed the

account and others with Verizon directly.

15. On May 27, 2014, Verizon sent an email to Ms. Anderson stating that Verizon completed an investigation and concluded that Ms. Anderson is not responsible for the Verizon account at issue.

16. In relation to the fraudulent Verizon account that ERC and MRS are now attempting to collect, Ms. Anderson neither opened the account nor benefitted from the account in any way, and she has no knowledge of who may have opened the account or received the goods for which they were opened.

17. Ms. Anderson has engaged in repeated efforts to identify the perpetrator and to free herself of the debt collectors, including ERC and MRS, who have attempted to collect from her.

18. Despite Ms. Anderson's efforts, ERC and MRS have continued their unlawful collection attempts.

19. Ms. Anderson has suffered damages as a result of the actions of the Defendants.

**Specific Allegations Related to ERC's and MRS's Attempted Collections Against Ms. Anderson**

20. Ms. Anderson incorporates the preceding allegations by reference.

21. Some time prior to October 2014, Verizon engaged ERC to collect a debt

allegedly owed by Ms. Anderson; alternatively, some time prior to October 2014, ERC purchased a debt previously held by Verizon which was allegedly owed by Ms. Anderson.

22. On information and belief, Verizon engaged ERC to collect a debt allegedly owed by Ms. Anderson after Verizon had already concluded Ms. Anderson was not responsible for the account at issue; alternatively, on information and belief, ERC purchased a debt previously held by Verizon which was allegedly owed by Ms. Anderson, after Verizon had already concluded Ms. Anderson was not responsible for the account at issue.

23. On or about October 21, 2014, ERC communicated with Candace Anderson for the first time, by sending a collection letter addressed to Ms. Anderson at her home address ("ERC collection letter").

24. The ERC collection letter indicated that a principal balance of $1,401.74 was owed and due, along with an additional $252.31 in collection fees. However, the ERC collection letter did not detail how or why these collection fees were incurred.

25. The ERC collection letter falsely represented the amount owed as Ms. Anderson did not owe the debt at issue.

26. On information and belief, the false representation was the direct result of

one or more of the following:

    a.    Verizon's false representations to ERC that the debt was owed by Ms. Anderson and Verizon's failure to notify ERC that, upon Verizon's own investigation, Ms. Anderson was not responsible for the debt at issue; and/or

    b.    ERC's own actions in falsely representing that it had a legal right to collect the debt at issue when, in fact, it did not.

27. On October 28, 2014, Ms. Anderson responded to ERC's collection letter, disputing the collection and requesting validation of the debt, including: appropriate documentation to verify the validity of the debt, the original signed contract, any billing statements, any payments made on the account, and any other evidence ERC may have to show an amount due or who may actually be responsible for payment. In addition, Ms. Anderson also requested an accounting statement for the debt showing the collection fees that have been added to the account and for what purpose.

28. To date, Ms. Anderson has not received any reply from ERC in response to her dispute and request for validation of October 28, 2014.

29. On or about April 24, 2015, MRS communicated with Candace Anderson for the first time, by sending a collection letter addressed to Ms. Anderson

at her home address ("MRS collection letter").

30. On information and belief, the MRS collection letter was an attempt to collect the same Verizon debt that ERC had attempted to collect in October 2014.

31. The MRS collection letter indicated that a principal balance of $1,401.74 was owed and due, along with an additional $252.31 in collection fees. However, the MRS collection letter did not detail how or why these collection fees were incurred.

32. The MRS collection letter falsely represented the amount owed as Ms. Anderson did not owe the debt at issue.

33. On information and belief, the false representation was the direct result of one or more of the following:

   a. Verizon's false representations to ERC that the debt was owed by Ms. Anderson and Verizon's failure to notify ERC that, upon Verizon's own investigation, Ms. Anderson was not responsible for the debt at issue;

   b. ERC's failure to inform Verizon that Ms. Anderson disputed the debt and ERC's failure to notify Verizon that, upon ERC's own investigation, Ms. Anderson was not responsible for the debt at issue;

    c.    Verizon's false representations to MRS that the debt was owed by Ms. Anderson and Verizon's failure to notify MRS that, upon Verizon's own investigation, Ms. Anderson was not responsible for the debt at issue;

    d.    ERC's false representations to MRS that the debt was owed by Ms. Anderson and ERC's failure to notify MRS that, upon ERC's own investigation, Ms. Anderson was not responsible for the debt at issue; and/or

    e.    MRS's own actions in falsely representing that it had a legal right to collect the debt at issue when, in fact, it did not.

34. On May 5, 2015, Ms. Anderson responded to MRS's collection letter, disputing the collection and requesting validation of the debt, including: appropriate documentation to verify the validity of the debt, the original signed contract, any billing statements, any payments made on the account, and any other evidence MRS may have to show an amount due or who may actually be responsible for payment. In addition, Ms. Anderson also requested an accounting statement for the debt showing the collection fees that have been added to the account and for what purpose.

35. On or about May 24, 2015, Ms. Anderson received a response to her dispute

and request for validation from MRS.

36. With its response, MRS included one Verizon statements, from March-April 2013.

37. Beyond this one 2013 statement, MRS failed to provide any meaningful verification of the debt, including its failure to provide the original signed contract, any further billing statements, any payments made on the account, or any other evidence MRS had, either directly or indirectly from ERC or Verizon, to show an amount due or who may actually be responsible for payment.

38. Further, MRS failed to provide with its response any accounting statement for the debt showing the collection fees that have been added and for what purpose.

39. Despite its failure to properly validate the debt, MRS continued its collections efforts against Ms. Anderson, by sending a second collection letter to Ms. Anderson on or around June 5, 2015 ("second MRS collection letter").

40. The second MRS collection letter again indicated that a principal balance of $1,401.74 was owed and due, along with an additional $252.31 in collection fees. However, the second MRS collection letter did not detail how or why

these collection fees were incurred.

41. Further, the second MRS collection letter again falsely represented the amount owed as Ms. Anderson did not owe the debt at issue.

42. On information and belief, the false representation was the direct result of one or more of the following:

   a. Verizon's false representations to ERC that the debt was owed by Ms. Anderson and Verizon's failure to notify ERC that, upon Verizon's own investigation, Ms. Anderson was not responsible for the debt at issue;

   b. ERC's failure to inform Verizon that Ms. Anderson disputed the debt and ERC's failure to notify Verizon that, upon ERC's own investigation, Ms. Anderson was not responsible for the debt at issue;

   c. Verizon's false representations to MRS that the debt was owed by Ms. Anderson and Verizon's failure to notify MRS that, upon Verizon's own investigation, Ms. Anderson was not responsible for the debt at issue;

   d. ERC's false representations to MRS that the debt was owed by Ms. Anderson and ERC's failure to notify MRS that, upon ERC's own investigation, Ms. Anderson was not responsible for the debt at issue;

      and/or

    e.    MRS's own actions in falsely representing that it had a legal right to collect the debt at issue when, in fact, it did not.

43.    As a result of the acts alleged above, Plaintiff has suffered damages.

## **COUNT I – Fair Debt Collection Practices Act (All Defendants with the exception of Verizon)**

44.    Ms. Anderson incorporates the preceding allegations by reference.

45.    The actions of ERC violated the provisions of the FDCPA, including but not limited to: 15 U.S.C. §§ 1692e, 1692f, and 1692g.

46.    The actions of MRS violated the provisions of the FDCPA, including but not limited to: 15 U.S.C. §§ 1692e, 1692f, and 1692g.

47.    Ms. Anderson suffered damages as a result of these violations of the FDCPA.

## **COUNT II – Michigan Occupational Code as an alternative to claims under the Michigan Collection Practices Act (All Defendants with the Exception of Verizon)**

48.    Ms. Anderson incorporates the preceding allegations by reference.

49.    Defendants, with the exception of Verizon, are each a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

50. Ms. Anderson is a "debtor" as that term is defined in M.C.L. § 339.901(f).

51. The foregoing acts of ERC in attempting to collect this alleged debt from Ms. Anderson constitute violations of the MOC including, but not limited to, the following: M.C.L. §§ 339.915.

52. The foregoing acts of MRS in attempting to collect this alleged debt from Ms. Anderson constitute violations of the MOC including, but not limited to, the following: M.C.L. §§ 339.915 and 339.918.

53. Ms. Anderson suffered damages as a result of these violations of the MOC.

54. These violations of the MOC were willful.

### COUNT III – Michigan Collection Practices Act as an alternative to claims under the Michigan Occupational Code (All Defendants)

55. Ms. Anderson incorporates the preceding allegations by reference.

56. Defendants, with the exception of Verizon, are each a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g).

57. Defendant Verizon is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(ii).

58. Defendants' actions in attempting to collect from Ms. Anderson violated the MCPA including, but not limited to, the following: M.C.L. §§ 445.252.

59. Ms. Anderson suffered damages as a result of these violations of the MCPA.

60. These violations of the MCPA were willful.

### Demand for Jury Trial

61. Ms. Anderson demands trial by jury in this action.

### Demand for Judgment for Relief

62. *Accordingly, Ms. Anderson requests that the Court grant:*

    a. *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

    b. *Statutory damages.*

    c. *Treble damages.*

    d. *Statutory costs and attorney fees.*

    e. *A declaration that Ms. Anderson does not owe the Verizon account.*

        Respectfully Submitted,

        LYNGKLIP & ASSOCIATES
        CONSUMER LAW CENTER, PLC

        By:  s/ Carl Schwartz
        Carl Schwartz (P-70335)
        Attorney for Candace Anderson
        24500 Northwestern Highway, Ste. 206
        Southfield, MI 48075
        (248) 208-8864
        Carl@MichiganConsumerLaw.Com

Dated: October 21, 2015