UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN–SOUTHERN DIVISION

CANDACE ANDERSON,
      Plaintiff,

-vs-                           Case No. 2:15-cv-13732
                                   Hon. Nancy G. Edmunds
                                   Mag. Judge: Mona K. Majzoub
ENHANCED RECOVERY COMPANY, LLC,
MRS BPO, L.L.C. and
CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,
      Defendants.

## FIRST AMENDED COMPLAINT

*Candace Anderson states the following claims for relief:*

### Jurisdiction

1.    This Court has jurisdiction under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

2.    This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the federal law claims.

### Parties

3.    The Plaintiff to this lawsuit is Candace Anderson, who resides in Oakland County, Michigan.

4.    The Defendants to this lawsuit are as follows:

a.   Enhanced Recovery Company, LLC ("ERC"), a collection agency that conducts business in Michigan.

b.   MRS BPO, L.L.C. ("MRS"), a collection agency that conducts business in Michigan.

c.   Cellco Partnership d/b/a Verizon Wireless ("Verizon"), a foreign entity that conducts business in Michigan.

## Venue

5.   The transactions and occurrences which give rise to this action occurred in Oakland County, Michigan.

6.   Venue is proper in the Eastern District of Michigan.

## General Allegations

7.   At issue is a Verizon account opened using Ms. Anderson's personal identifiers, without her knowledge or consent ("the account").

8.   The debt at issue arises out of an alleged transaction that was primarily for personal, family or household purposes and, therefore, meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

9.   Ms. Anderson believes that her identity was stolen sometime prior to April 2014 and that the opening of the account stems from that identity theft.

2

10.    In or around May 2014, Ms. Anderson filed a police report and disputed the account and others with Verizon directly.

11.    On May 27, 2014, Verizon sent an email to Ms. Anderson stating that Verizon completed an investigation and concluded that Ms. Anderson is not responsible for the account.

12.    Ms. Anderson has engaged in repeated efforts to identify the perpetrator and to free herself of the debt collectors, including ERC and MRS, who have attempted to collect from her.

13.    Despite Ms. Anderson's efforts, ERC and MRS have continued their unlawful collection attempts.

14.    Verizon regularly engages in collection activities to collect debts owed to it, including, but not limited to:

    a.    Communicating with debt collectors to collect debts and

    b.    Providing documentation to debt collectors to verify disputed debts in support of debt collection efforts.

15.    Verizon's collection activities are confined and are directly related to the operation of its business, which is not a collection agency.

16.    Prior to October 21, 2014, Verizon engaged ERC to collect a debt allegedly owed by Ms. Anderson regarding the account ("the alleged debt").

3

17.    Alternatively, prior to October 21, 2014, ERC purchased the alleged debt from Verizon.

18.    Verizon engaged ERC to collect the alleged debt after Verizon had already concluded that Ms. Anderson did not owe the alleged debt.

19.    Alternatively, Verizon sold the alleged debt to ERC after Verizon had already concluded that Ms. Anderson did not owe the alleged debt.

20.    On or about October 21, 2014, ERC communicated with Candace Anderson for the first time by sending a collection letter addressed to Ms. Anderson ("the ERC collection letter").

21.    The ERC collection letter indicated that Ms. Anderson owed a principal balance of $1,401.74, along with an additional $252.31 in collection fees.

22.    The ERC collection letter did not detail how or why the collection fees were incurred.

23.    The ERC collection letter falsely represented the amount owed by Ms. Anderson, as Ms. Anderson did not owe the alleged debt.

24.    Upon information and belief, the false representation was the direct result of one or more of the following:

a.    Verizon's false representations to ERC that Ms. Anderson owed the alleged debt and Verizon's failure to notify ERC that, upon Verizon's

4

own investigation, Ms. Anderson did not owe the alleged debt; and/or

b.   ERC's own actions in falsely representing that Ms. Anderson owed the alleged debt.

25.   On October 28, 2014, Ms. Anderson responded to ERC's collection letter, disputing the collection and requesting verification of the alleged debt, including: appropriate documentation to verify the validity of the alleged debt, the original signed contract, any billing statements, any payments made on the account, any other evidence ERC may have to show an amount due or who may actually be responsible for payment, and an accounting statement for the alleged debt showing the collection fees that have been added to the account and for what purpose.

26.   To date, Ms. Anderson has not received any reply from ERC in response to her dispute and request for verification of October 28, 2014.

27.   Prior to April 24, 2015, Verizon engaged MRS to collect the alleged debt.

28.   Alternatively, prior to April 24, 2015, MRS purchased the alleged debt.

29.   Verizon engaged MRS to collect the alleged debt after Verizon had already concluded that Ms. Anderson did not owe the alleged debt.

30.   Alternatively, Verizon sold the alleged debt to MRS after Verizon had already concluded that Ms. Anderson did not owe the alleged debt.

5

31.  On or about April 24, 2015, MRS communicated with Candace Anderson for the first time, by sending a collection letter addressed to Ms. Anderson at her home address ("the MRS collection letter").

32.  The MRS collection letter was an attempt to collect the alleged debt that ERC had attempted to collect in October 2014.

33.  The MRS collection letter indicated that a principal balance of $1,401.74 was owed and due, along with an additional $252.31 in collection fees.

34.  The MRS collection letter did not detail how or why the collection fees were incurred.

35.  The MRS collection letter falsely represented the amount owed by Ms. Anderson, as Ms. Anderson did not owe the alleged debt.

36.  Upon information and belief, the false representation was the direct result of one or more of the following:

   a.  Verizon's false representations to MRS that Ms. Anderson owed the alleged debt and Verizon's failure to notify MRS that, upon Verizon's own investigation, Ms. Anderson did not owe the alleged debt; and/or

   b.  MRS's own actions in falsely representing that Ms. Anderson owed the alleged debt.

6

37. On May 5, 2015, Ms. Anderson responded to MRS's collection letter by disputing the collection and requesting verification of the alleged debt, including: appropriate documentation to verify the validity of the alleged debt, the original signed contract, any billing statements, any payments made on the account, any other evidence MRS may have to show an amount due or who may actually be responsible for payment, and an accounting statement for the alleged debt showing the collection fees that have been added to the account and for what purpose ("the dispute letter").

38. After it received the dispute letter, MRS contacted Verizon to obtain verification of the alleged debt.

39. In response to the dispute letter, Verizon produced to MRS a single billing statement as purported verification of the alleged debt.

40. By producing the billing statement in response to the dispute letter, Verizon falsely represented that the alleged debt belonged to Ms. Anderson.

41. On or about May 24, 2015, Ms. Anderson received MRS' response to the dispute letter.

42. MRS responded to the dispute letter by producing the billing statement from Verizon.

43.    MRS failed to verify that Ms. Anderson owed the alleged debt, given that Ms. Anderson informed MRS that she was a victim of identity theft and that she did not open the account.

44.    Despite its failure to verify the debt, but as a result of Verizon's production of the billing statement, MRS continued its collection efforts against Ms. Anderson by sending a second collection letter to Ms. Anderson on or around June 5, 2015 ("the second MRS collection letter").

45.    The second MRS collection letter again indicated that Ms. Anderson owed a principal balance of $1,401.74, along with an additional $252.31 in collection fees.

46.    The second MRS collection letter did not detail how or why the collection fees were incurred.

47.    The second MRS collection letter again falsely represented the amount owed by Ms. Anderson, as Ms. Anderson did not owe the alleged debt.

48.    Upon information and belief, the false representation was the direct result of one or more of the following:

a.    Verizon's false representations to MRS that Ms. Anderson owed the alleged debt and Verizon's failure to notify MRS that, upon Verizon's own investigation, Ms. Anderson did not owe the alleged debt; and/or

8

b.      MRS's own actions in falsely representing that Ms. Anderson owed the alleged debt.

## COUNT I – FDCPA (ERC and MRS)

49.   Ms. Anderson incorporates the preceding allegations by reference.

50.   Ms. Anderson is a "consumer" as defined by 15 U.S.C. § 1692a(3), as she is allegedly obligated to pay the Verizon debt at issue.

51.   ERC and MRS both regularly collect debts owed to another and, therefore, each meets the definition of a "debt collector" under 15 U.S.C. § 1692a(6).

52.   At all relevant times, ERC and MRS each sought to collect a consumer debt from Ms. Anderson.

53.   The actions of ERC violated the provisions of the FDCPA, including but not limited to: 15 U.S.C. §§ 1692e, 1692f, and 1692g.

54.   The actions of MRS violated the provisions of the FDCPA, including but not limited to: 15 U.S.C. §§ 1692e, 1692f, and 1692g.

55.   Ms. Anderson suffered damages as a result of these violations of the FDCPA.

## COUNT II – Michigan Occupational Code, as an alternative to claims under the Michigan Collection Practices Act (ERC and MRS)

56.   Ms. Anderson incorporates the preceding allegations by reference.

57.   ERC and MRS are "collection agencies" as that term is defined in the

Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

58. Ms. Anderson is a "debtor" as that term is defined in M.C.L. § 339.901(f).

59. The foregoing acts of ERC in attempting to collect this alleged debt from Ms. Anderson constitute violations of the MOC including, but not limited to, the following: M.C.L. §§ 339.915.

60. The foregoing acts of MRS in attempting to collect this alleged debt from Ms. Anderson constitute violations of the MOC including, but not limited to, the following: M.C.L. §§ 339.915 and 339.918.

61. Ms. Anderson suffered damages as a result of these violations of the MOC.

62. These violations of the MOC were willful.

### COUNT III – Michigan Collection Practices Act, as an alternative to claims under the Michigan Occupational Code (All Defendants)

63. Ms. Anderson incorporates the preceding allegations by reference.

64. Each defendant is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g).

65. Each defendant's actions violated the MCPA including, but not limited to, the following: M.C.L. §§ 445.252.

66. Ms. Anderson suffered damages as a result of these violations of the MCPA.

67. These violations of the MCPA were willful.

10

## **Demand for Jury Trial**

68.    Ms. Anderson demands trial by jury in this action.

## **Demand for Judgment for Relief**

69.    *Accordingly, Ms. Anderson requests that the Court grant:*

a.    *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

b.    *Statutory damages.*

c.    *Treble damages.*

d.    *Statutory costs and attorney fees.*

e.    *A declaration that Ms. Anderson does not owe the Verizon account.*

Respectfully Submitted,

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC

By: /s/ Carl Schwartz
Carl Schwartz (P-70335)
Attorney for Candace Anderson
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
Carl@MichiganConsumerLaw.Com

Dated: December 17, 2015

11

## Certificate of Service

I hereby certify that on December 17, 2015, I served the foregoing document on the following counsel of record:

| Counsel | Manner Served |
|---|---|
| Steven W. Wells, Esq.<br>Schnelz Wells, P.C.<br>Attorneys for Verizon Wireless<br>280 North Old Woodward, Suite 250<br>Birmingham, Michigan 48009 | Electronically via the CM/ECF system |
| Deborah A. Lujan, Esq.<br>Collins Einhorn Farrell, P.C.<br>Attorneys for MRS BPO, LLC<br>4000 Town Center, Suite 909<br>Southfield, Michigan 48075 | Electronically via the CM/ECF system |

Respectfully Submitted,

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC

By: /s/ Carl Schwartz
Carl Schwartz (P-70335)
Attorney for Candace Anderson
24500 Northwestern Highway, Suite 206
Southfield, Michigan 48075
(248) 208-8864
Carl@MichiganConsumerLaw.Com

Dated: December 17, 2015

12